## No. 25-1659

# United States Court of Appeals
### *for the*
# Fourth Circuit

JOHN EICHIN,

*Plaintiff-Appellant*,

– v. –

ETHICON ENDO-SURGERY, LLC; ETHICON ENDO-SURGERY INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

# OPENING BRIEF OF APPELLANT

Brandon C. Hall
HART, DAVID, CARSON, LLP
141 Traction Street, Suite 2136
Greenville, South Carolina 29601
(312) 768-0089

Joshua T. Hawkins
Helena L. Jedziniak
HAWKINS & JEDZINIAK, LLC
1225 South Church Street
Greenville, South Carolina 29605

Hunter L. Windham
LAW OFFICE OF HUNTER L. WINDHAM, LLC
177 Grove Street
Charleston, South Carolina 29403
(843) 402-8057

*Counsel for Appellant*

CP COUNSEL PRESS     (800) 4-APPEAL • [813999]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 25-1659      Caption: John Elchin v. Ethicon Endo-Surgery, LLC; Ethicon Endo Surgery, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

John Eichin
(name of party/amicus)

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

12/01/2019 SCC      - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Brandon C. Hall                          Date:          7-3-2025

Counsel for: Appellant

- 2 -

Print to PDF for Filing

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE ............................................................... 1

STANDARD OF REVIEW .................................................................... 9

SUMMARY OF THE ARGUMENT ...................................................... 9

ARGUMENT ...................................................................................... 10

    I.    The district court's order denying Mr. Eichin's motion to amend the scheduling order rested on two key erroneous facts – that Plaintiff knew the exact model number of the surgical stapler before the expert deadline passed and that the Ethicon Entities were litigating the action for much longer than eight months ................................................................. 11

    II.   The district court erred in relying on Fed. R. Civ. P. 16 when it should have used the more-specific Fed. R. Civ. P. 6 .................... 17

CONCLUSION .................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Bresler v. Wilmington Trust Co.,*
  855 F.3d 178 (4th Cir. 2017) ........................................................................9

*Colony Apartments v. Abacus Project Mgmt., Inc.,*
  197 F. App'x 217 (4th Cir. 2006) ............................................................18, 19

*Farabee v. Gardella,*
  131 F.4th 185 (4th Cir. 2025) .......................................................................9

*Faulconer v. Centra Health, Inc.,*
  808 F. App'x 148 (4th Cir. 2020) ................................................................14

*In re Lone Star Industries, Inc.,*
  Nos. 93-1505, 93-1506, 1994 WL 118475 (4th Cir. April 7, 1994) ..................14

*Southern v. Bishoff,*
  675 F. App'x 239 (4th Cir. 2017) ................................................................15

*Talley v. Folwell,*
  133 F.4th 289 (4th Cir. 2025) ......................................................................14

*Thompson v. E.I. DuPont de Nemours & Co.,*
  76 F.3d 530 (4th Cir. 1996) .........................................................................19

*Wall v. Rasnick,*
  42 F.4th 214 (4th Cir. 2022) ........................................................................10

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1332(a)(1) ....................................................................................1

Fed. R. Civ. P. 6 ....................................................................................*passim*

Fed. R. Civ. P. 6(b)(1) ...................................................................................8

Fed. R. Civ. P. 6(b)(1)(B) ........................................................................17, 18

Fed. R. Civ. P. 16 .........................................................................1, 10, 11, 17

Fed. R. Civ. P. 16(b)(4) ..........................................................................8, 17, 18

ii

Fed. R. Civ. P. 26 ...................................................................................17, 18, 20

Fed. R. Civ. P. 26(a)(2)(A) ...............................................................................17

Fed. R. Civ. P. 26(a)(2)(D) ...............................................................................17

Fed. R. Civ. P. 37(c)...........................................................................................8

Fed. R. Civ. P. 59(e)...........................................................................................9

Fed. R. Evid. 702 ..............................................................................................17

Fed. R. Evid. 703 ..............................................................................................17

Fed. R. Evid. 705 ..............................................................................................17

## STATEMENT OF JURISDICTION

This Court has jurisdiction of this appeal under 28 U.S.C. § 1291 because it is from a final order of a district court granting summary judgment to Ethicon Endo-Surgery, Inc. and Ethicon Endo-Surgery, LLC.[1] The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## STATEMENT OF THE ISSUES

I.      **Whether the district court erred in relying on two key erroneous facts – that Plaintiff knew the exact model number of the surgical stapler before the expert deadline passed and that the Ethicon Entities were litigating the action for much longer than eight months – when it denied Mr. Eichin's motion to amend the scheduling order and granted the Ethicon Entities' motion for summary judgment.**

II.     **Whether the district court erred in reviewing the motion to amend the scheduling order under Fed. R. Civ. P. 16 instead of the more specific rule, Fed. R. Civ. P. 6.**

## STATEMENT OF THE CASE

Mr. John Eichin was admitted to Grand Strand Regional Medical Center in Myrtle Beach, South Carolina to undergo surgery for diverticulitis and to remove a large mass in his colon via a sigmoid resection. JA78. The day after the surgery, Mr. Eichin developed a fever, experienced rapid accelerating heart rate, and began feeling so poor

---

[1] Mr. Eichin refers to Ethicon Endo-Surgery, Inc. and Ethicon Endo-Surgery, LLC collectively as the "Ethicon Entities" because it is unnecessary to distinguish between the two entities for the purposes of this appeal. The two issues raised by Mr. Eichin on appeal relate to each entity in the same manner, whether or not Ethicon Endo-Surgery, Inc. only marketed the surgical stapler, JA101, and whether or not Ethicon Endo-Surgery, LLC only manufactured the stapler, JA128.

1

that he thought he "would rather die" than continue living. JA78. Mr. Eichin was diagnosed with sepsis and underwent emergency surgery to repair a "colorectal anastomotic leak," which was caused by non-functional staples that had been used to close the incisions from his earlier surgery. JA78. Doctor Dean Baughman and Doctor Brant Clatterbuck performed this surgery. JA78. Mr. Eichin ended up having numerous other surgeries related to the damage and other issues caused from the non-functioning staples, including the placement of a large mesh throughout his abdomen. JA78.

The doctors performing Mr. Eichin's surgery used various staplers to close the incisions made during surgery. JA78. Over the years, there have been several recalls and issues related to malfunctioning medical staplers which have led to medical complications, future surgeries, and serious personal injury for patients.

Mr. Eichin brought suit against several entities on October 6, 2021, including Covidien LP; Covidien Sales LLC; Covidien Holding, Inc.;[2] and Medtronic, Inc. JA15. Generally, Mr. Eichin alleged that each of the defendants manufactured, marketed, packaged, labeled, and sold surgical staplers, including the one that must have been used in Mr. Eichin's surgery, to Grand Strand Medical Center and throughout the state of South Carolina. JA17–18. When Mr. Eichin filed his action, the only information he possessed pertaining to the stapler led him to reasonably

---

[2] Covidien LP; Covidien Sales LLC; and Covidien Holding, Inc. are referred to collectively as the "Covidien Defendants."

believe that three of the staplers used during his surgery were manufactured by one of the Covidien Defendants or by Medtronic.

Throughout this litigation, Mr. Eichin, the Ethicon Entities, and all former defendants[3] have actively engaged in discovery into which surgical stapler was the stapler that resulted in the non-functioning staples that caused Mr. Eichin's sepsis. Several subpoenas were issued to Grand Strand Medical Center in efforts to identify information about the stapler, including the brand, model number, manufacturer, etc. However, until very late in the litigation, the information and documents produced by Grand Stand Medical Center were insufficient and mostly unhelpful in ascertaining which stapler caused the injury to Mr. Eichin.

As the parties continued to conduct discovery into which stapler caused the injury, Mr. Eichin amended his complaint to add *Ethicon, Inc.* and *Johnson & Johnson* as defendants after he discovered that two of the staplers used may have been manufactured by these defendants. JA70–87 (Plaintiff's Second Amended Complaint at Law); *see also* JA88–90 (Plaintiff's Consent Motion to Stay Proceedings).[4]

---

[3] The former defendants are Covidien LP; Covidien Sales LLC; Covidien Holding, Inc.; and Medtronic, Inc.

[4] In Mr. Eichin's *Consent Motion to Stay Proceedings*, he requested a stay of all proceedings in the case until the newly-added defendants could make an appearance and file their respective answers. JA89. The district court issued an order staying the proceedings "for a period of 90 days or until Defendants Johnson & Johnson and Ethicon, Inc. have made an appearance in this case and answered Plaintiffs Second Amended Complaint." JA10 (Dkt. Entry # 43).

3

On December 14, 2022, Ethicon, Inc. and Johnson & Johnson filed their joint answer to Mr. Eichin's amended complaint. JA10 (Dkt. Entry 48). Mr. Eichin again moved to amend the pleadings, again with the consent of Ethicon, Inc. and Johnson & Johnson, to substitute *Ethicon Endo-Surgery, Inc.* and *Ethicon Endo-Surgery, LLC* into the action for *Ethicon, Inc.* and *Johnson & Johnson*, which would be dismissed. JA91.

On June 28, 2023, the district court granted the joint motion for an amendment of the pleadings, which would result in a substitution of *Ethicon Endo-Surgery, Inc.* and *Ethicon Endo-Surgery, LLC* (the "Ethicon Entities") into the action, for the first time. JA98–99. The Ethicon Entities filed their respective answers on July 26, 2023. *See* JA100–126 (Answer of Defendant Ethicon Endo-Surgery, Inc.); JA127–154 (Answer of Defendant Ethicon Endo-Surgery, LLC). At the time the Ethicon Entities entered the action by filing their answers, the parties were on their fourth scheduling order. JA96.

Throughout the fall of 2023, Mr. Eichin, the Ethicon Entities, and the remaining defendants continued to correspond with Grand Strand Medical Center and its respective counsel in efforts to identify the exact stapler that caused the colorectal anastomotic leak. Each of the defendants denied that it was the manufacturer of the stapler that caused the leak.

4

Finally, on December 11, 2023, Counsel for the Ethicon Entities received an email from Mr. Will Thomas, Esq. (who had recently been retained by Grand Strand Medical Center to assist with the identification of the stapler) that provided *some* information on the stapler used. JA316–323. Counsel for the Ethicon Entities forwarded this email and its attachments to Mr. Eichin's Counsel with the admission "that the stapler at issue was manufactured by Ethicon." JA316. Because it was finally resolved that Ethicon had manufactured the stapler, the parties agreed to a stipulation dismissing Covidien, LP; Covidien Sales, LLC; Covidien Holding, Inc.; and Medtronic, Inc. from the action. JA157. The stipulation left Ethicon Endo-Surgery, LLC and Ethicon Endo-Surgery, Inc. as the lone defendants.

Although Mr. Thomas' email was a step in the right direction and answered the inquiry who manufactured the stapler, it fell far short of identifying the exact stapler that caused the anastomosis in Mr. Eichin's surgery. The attachments identified five different staplers that were used during the surgery:

- RELOAD STPLR 75MM, Catalog # TCR75, SIN 361702;

- STAPLER CUTTER ENDO 40MM, Catalog # CS40G, SIN 732847;

- STAPLER INT 65MM, Catalog # 020242, SIN 374350;

- STAPLER SKIN WIDE 35MM, Catalog # PXW35, SIN 378495;

- STAPLER INT CIR 33MM, Catalog # ECS33A, SIN 312206;

5

JA319–323. However, the email and attachments failed to identify which stapler or staplers, of the five identified, caused the anastomotic leak. And at this point in the litigation, there was no way for Mr. Eichin to know which of the five was the stapler at issue.

Following the revelation on who manufactured the stapler, Mr. Eichin rescheduled the depositions of Dr. Baughman and Dr. Clatterbuck, the operating surgeons who would have used the stapler and/or performed the second surgery removing the non-functioning staples. Mr. Eichin also served upon the Ethicon Entities discovery requests that included interrogatories and requests for production that sought information as to each of the five staplers that were used during the surgery.

On March 18, 2024, the Ethicon Entities provided their responses to Mr. Eichin's discovery requests, stating that their responses would be "limited to the ECS33A circular stapler, the device used to create the anastomosis that is the subject of Plaintiff's claims." JA326. The Ethicon Entities objected to any requests seeking information and documents "concerning irrelevant medical devices," which they identified as any stapler other than the ECS33A model. JA325–26. Finally, through these discovery responses, Mr. Eichin knew that it was the ECS33A circular stapler, manufactured by the Ethicon Entities, which caused his injuries.

At this point in time in the spring of 2024, much had already been accomplished through the discovery process – the list of eight potential defendants had been narrowed down to just two; depositions had been taken of Mr. Eichin, his wife, and both surgical doctors, Dr. Baughman and Dr. Clatterbuck; and the exact stapler had just been identified by the two remaining defendants. Yet, after only being in the action for eight months, the Ethicon Entities filed a motion for summary judgment, arguing in part that Mr. Eichin had "failed to identify or submit the written report of any expert by his March 15, 2024 deadline to do so, as set forth in [the] Court's Fifth Consent Amended Scheduling Order." JA161. This motion came just three days after the Ethicon Entities, *for the very first time*, acknowledged that they knew the exact model of the stapler at issue, which was ECS33A.

Up until March 18, 2024, when the Ethicon Entities provided their responses identifying the ECS33A stapler, Mr. Eichin had no basis to know the exact model number of the stapler that had caused the anastomotic leak. Although Mr. Eichin had not disclosed any expert by March 15, 2024, he timely moved the district court for an amended scheduling order to extend that deadline on April 4, 2024, only seventeen days after he discovered the model number (on March 18) and twenty days after the deadline had passed. JA288. Between the time that the Ethicon Entities had appeared in the action and their filing of their motion for summary judgment, the district court had only extended the scheduling order once. JA155. The motion

for summary judgment was filed a mere eight months since the Ethicon Entities had filed their answers to Mr. Eichin's Second Amended Complaint.

On October 24, 2024, the district court issued a single order denying Mr. Eichin's motion to extend the expert deadline and granting the Ethicon Entities' motion for summary judgment. JA520. The district court first considered which Federal Rule of Civil Procedure provided the correct legal standard for the motion to extend the scheduling order, ultimately choosing Rule 16(b)(4) over Rules 6(b)(1)B) and 37(c). JA528–530. The district court went on to conclude that Mr. Eichin had failed to show good cause for an amendment to the scheduling order. JA531–533. The district court based its conclusions on several factual findings, paying particular attention to its understanding of the timeline in finding that the Ethicon Entities answered Mr. Eichin's complaint on December 14, 2022. JA531. The district court also found that "Plaintiff waited almost four months from his December receipt of the identity of the Stapler to pursue [an] amendment." JA532. In concluding there was not good cause to grant an amendment, the district court remarked that Mr. Eichin "has still not informed the Court of a retained expert or sought leave to file a written report by an expert." JA533.

After denying Mr. Eichin's motion to amend the scheduling order to extend the expert deadline, the district court granted the Ethicon Entities' motion for summary judgment, concluding that without an expert testifying as to any design

defect or as to causation of the injury, Mr. Eichin's product defect claims failed as a matter of law. *See* JA533–539.

Mr. Eichin timely filed a Rule 59(e) motion requesting the district court to reconsider Mr. Eichin's motion to amend the scheduling order and the Ethicon Entities' motion for summary judgment, JA541, but the district court denied Mr. Eichin's motion, JA697–699. Mr. Eichin timely filed his notice of appeal on June 6, 2025. JA700.

## STANDARD OF REVIEW

A "district court's denial of a request for additional time for discovery [is reviewed] for abuse of discretion." *Farabee v. Gardella*, 131 F.4th 185, 192 (4th Cir. 2025); *see also Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 189 (4th Cir. 2017) ("We review a district court's discovery rulings . . . for abuse of discretion.").

## SUMMARY OF THE ARGUMENT

In denying Mr. Eichin's motion to amend the scheduling order, the district court erred by relying on two erroneous factual premises, which drove it to conclude there was not good cause to grant an amendment to extend the expert deadline. First, the district court found that Mr. Eichin knew the exact model number of the stapler four months before the expert deadline passed, but this was incorrect as he did not actually learn the exact model of the stapler until after the deadline had passed. Second, the district court misunderstood the amendments substituting the Ethicon

9

Entities into the action, concluding that they had been litigating this case for several years when in fact the Ethicon Entities had filed their answers only eight months before their motion for summary judgment. The district court's factual findings led to an erroneous conclusion that Mr. Eichin had been dilatory in prosecuting his claims and that there was not good cause to extend the expert deadline.

The district court also erred in finding that the standard for granting or denying an amendment was Federal Rule of Civil Procedure 16, when the correct standard was Rule 6. The district court's erroneous factual conclusions and use of the incorrect standard for analyzing the motion to amend the scheduling order each warrant a reversal of the district court's order denying Mr. Eichin's motion to amend and granting the Ethicon Entities motion for summary judgment. Mr. Eichin requests that this Court reverse the district court's order and remand this case with instructions to issue a new scheduling order.

## ARGUMENT

A district court abuses its discretion "when it relies on erroneous factual or legal premises." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022). In the district court's *Order and Opinion* denying Mr. Eichin's motion to amend the expert deadline and granting the Ethicon Entities motion for summary judgment, JA520, the district court premised its conclusions on erroneous factual findings and utilized the incorrect legal standard for granting a motion to amend. Therefore, this Court

10

should reverse the district court's order and remand with instructions to allow for the amendment of the scheduling order.

**I.    The district court's order denying Mr. Eichin's motion to amend the scheduling order rested on two key erroneous facts – that Plaintiff knew the exact model number of the surgical stapler before the expert deadline passed and that the Ethicon Entities were litigating the action for much longer than eight months.**

The district court erred in making two key factual findings that drove its analysis of Mr. Eichin's motion to amend the scheduling order and the Ethicon Entities' motion for summary judgment. Both factual findings all but compelled the district court to conclude that there was not good cause to extend the scheduling order and allow Mr. Eichin additional time to name an expert. Had the district court not relied on these incorrect factual findings, it would have reached the opposite conclusion and allowed an amendment to the scheduling order.[5]

As to the first error, the district court found that "Plaintiff waited almost four months from his December receipt of the identity of the Stapler to pursue [amendment of the scheduling order], and Plaintiff did so nineteen days *after* the materials he seeks to obtain were due." JA532 (emphasis in original). However, Mr.

---

[5] Whether the district court should have reviewed the pending motion to amend the expert deadline under Federal Rule of Civil Procedure 6 or Rule 16 is discussed in the next section, but regardless which rule applies, the result of the analysis remains the same under either approach – there was "good cause" and "excusable neglect" to grant the motion and the district court would have done so had it not made erroneous factual findings.

Eichin did not actually know the exact identity and model number of the stapler at this time but only knew with any certainty what entity had manufactured the stapler. It was not until months later, just after the expert deadline had passed, that Mr. Eichin finally discovered that the model number must be ECS33A based on objections made by the Ethicon Entities to his discovery requests.

The district court based its finding – that Mr. Eichin knew the exact model number of the surgical stapler on December 11, 2023 – on an email from Ethicon's Counsel to Mr. Eichin's Counsel. *See* JA316–323. This email to Mr. Eichin's counsel contained an acknowledgment from the Ethicon Entities' Counsel, *for the very first time*, that "the stapler at issue was manufactured by Ethicon." JA316. But the email and the attached "screen shots" only provided a single piece of the puzzle: what entity manufactured the stapler. It did not include other key and necessary information for retaining an expert, including the stapler's model number, lot number, batch number, etc. As provided in the screen shots attached to the email, the only new information Mr. Eichin received in this email is that the Ethicon Entities admitted it looked as if the stapler used during Mr. Eichin's surgery was an Ethicon stapler.

It was impossible to discern the exact model number of the stapler from the email and its attachments. The attachments listed five different staplers that *may* have been used based on their SIN/UIN codes, including the following: 361702;

12

732847; 374350; 378495; and 312206. *See* JA319–324. The Ethicon Entities conveniently failed to admit which stapler of the five potential staplers was at issue.

After Mr. Eichin determined that the stapler used was one of five potential Ethicon staplers, he issued various discovery requests to the Ethicon Entities, including requests relating to the design, manufacture, sale, and recall of all of the five potential staplers identified by the Ethicon Entities. Notably, the Ethicon Entities did not volunteer which stapler was the exact stapler at issue at any point in December of 2023 or before the expert deadline on March 15, 2024. During this time, the depositions of both Dr. Baughman and Dr. Clatterbuck were taken, and those depositions did not confirm or deny which stapler was the culprit.

It was not until Mr. Eichin received the Ethicon Entities' responses to Mr. Eichin's discovery requests, when the Ethicon Entities refused to answer discovery requests relating to any stapler other than the ECS33A stapler, that he knew that the stapler at issue was the ECS33A model number. *See* JA326 ("EES's responses to Plaintiff's Interrogatories and Requests for Production will be limited to the ECS33A circular stapler, the device used to create the anastomosis that is the subject of Plaintiff's claims."). Before these discovery responses, which were provided on March 18, 2024, Mr. Eichin had no way to know that ECS33A was the model number of the stapler that caused his injuries.

13

The district court heavily relied upon this "four month" period in perceiving Mr. Eichin had all the information he needed and did nothing. In actuality, Mr. Eichin missed the expert disclosure deadline by a mere *twenty days*, less than three weeks, and moved for an extension only *seventeen days* after this new evidence came to light.

Based on similar orders and holdings in other cases in this Circuit, the district court would have extended the deadline had it concluded Mr. Eichin only missed the deadline by twenty days, after receipt of new evidence. Compare *In re Lone Star Industries, Inc.*, Nos. 93-1505, 93-1506, 1994 WL 118475 (4th Cir. April 7, 1994) (holding there was good cause for deviation from a deadline set in the scheduling order when "evidence needed . . . did not surface until after the amendment deadline" and the party who received the new evidence "served its motion to amend only *thirty-six days* after the deadline") with *Talley v. Folwell*, 133 F.4th 289 (4th Cir. 2025) (holding the district court did not abuse its discretion in denying a motion to modify a scheduling order when the plaintiff sought leave to amend the complaint to add four new plaintiffs *four months* after the deadline in the scheduling order and plaintiff knew of at least two of the new plaintiffs before the deadline expired); *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148 (4th Cir. 2020) (holding there was no abuse of discretion in denying plaintiff's motion to amend his complaint when it was filed *eight months* after the scheduling order's deadline when plaintiff

14

offered no explanation for the delay); *Southern v. Bishoff*, 675 F. App'x 239 (4th Cir. 2017) (holding the district court did not abuse its discretion when it denied modifying its scheduling order when plaintiffs submitted affidavits "*nearly two months* after the deadline for completion of discovery" and no justification for the delay was provided).

The district court's ruling was also driven by a second incorrect factual finding – that the Ethicon Entities had been litigating this action for years when they really were in the action for only eight months before filing their motion for summary judgment. The Ethicon Entities were officially substituted into the action on July 26, 2023 when they filed their respective answers. Although the Ethicon Entities respective answers related back to December 14, 2022, they were not parties to the action then or actively litigating until July 26, 2023. The Ethicon Entities entered the litigation when the Fourth Consent Amended Scheduling Order was in place, and the scheduling order was amended only a single time before they filed their motion for summary judgment.

The Ethicon Entities misled the district court into thinking they had been in this action for years and that this action had been lingering on its docket. JA293 ("This products liability case is two-and-a-half years old and on its fifth scheduling order."). On the contrary, Mr. Eichin timely filed his action against the entities he believed designed, manufactured, and marketed the stapler. He timely amended his

complaint to add other entities when he became aware of facts suggesting those entities might be responsible for the design, manufacture, or marketing of the stapler. And when Mr. Eichin determined that certain entities in fact had no connection to the stapler, he agreed to dismiss those entities from the action. *See* JA157.

In denying Mr. Eichin's motion to amend the scheduling order, the district court relied heavily on certain facts that suggested Mr. Eichin knew certain information and was dilatory, when in fact he did not yet know that information and was still working to figure it out. Mr. Eichin did not know the exact model number of the stapler used in his surgery until just after the expert deadline had passed. Mr. Eichin did not wait four months to pursue an amendment of the scheduling order but moved a mere twenty days after the deadline for an extension. Other cases in this Circuit suggest the district court would have found good cause or excusable neglect had it correctly understood the timeline of the action. The district court was misled into believing that Mr. Eichin waited four months to seek an extension, and that the Ethicon Entities had been in the action since its inception. Neither fact was true, and had the district court not made these erroneous factual findings, it would have concluded there was good cause to amend the scheduling order and allow Mr. Eichin to disclose his expert.

**II.    The district court erred in relying on Fed. R. Civ. P. 16 when it should have used the more-specific Fed. R. Civ. P. 6.**

In ruling on the motion to extend the expert deadline, the district court acknowledged that "two Federal Rules of Civil Procedure are implicated: Rules 6(b)(1)(B) and 16(b)(4)[,]" before concluding that Rule 16 is the more specific rule and therefore governs.[6] The rules provide, in pertinent part:

> Rule 6(b)(1)(B): "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

> Rule 16(b)(4): "A schedule may be modified only for good cause and with the judge's consent."

The district court did not acknowledge that Rule 26 also plays an integral part in the interplay of the rules. Rule 26(a)(2)(A) requires a party to disclose to the other parties "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705[,]" which pertain to expert testimony. Rule 26(a)(2)(D) sets out default timelines for when these expert disclosures must be made in the absence of "a stipulation or a court order." In issuing a scheduling order, a district court changes the default deadlines for the disclosure of expert testimony set out in Rule 26(a)(2)(D).

---

[6] Mr. Eichin can meet his burden for granting an extension of the expert disclosure deadline under either Federal Rule of Civil Procedure 6 or 16.

17

When Mr. Eichin moved to amend the scheduling order, he only sought an extension of time to provide his expert disclosure, which is ordinarily governed by Rule 26, not an extension of every deadline in the scheduling order. *See* JA289 ("Plaintiff requests that the Expert Disclosure deadline of March 15, 2024, be extended to May 16, 2024 . . . [t]his extension would not affect the remaining deadlines in the Scheduling Order."). Mr. Eichin's request was for the district court to "extend the time" for him to provide expert disclosures since it was "after the time ha[d] expired" for completing that act. *See* Rule 6(b)(1)(B). Mr. Eichin did not request or need a wholesale modification of the schedule the district court had set, only a minor modification to the one deadline for his expert disclosures.

Although Mr. Eichin was certainly seeking a small modification to the scheduling order, his requested modification was to extend the deadline that had already passed (Rule 6), which was a requirement that he disclose any expert witnesses (Rule 26). If the more specific rule of procedure applies, the more specific rule is Rule 6.

Under Rule 6, a district court should analyze a four-factor test to determine if there is excusable neglect to extend the time to allow a party a second chance at meeting a deadline. *Colony Apartments v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006). The four factors are:

18

> (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.

*Id.* (citing *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)).

Here, each of the four factors weighed in favor of a finding of excusable neglect such that an amendment to extend the expert deadline should have been granted. As to the first factor, there is no danger of prejudice to the non-moving parties, the Ethicon Entities. Discovery was still ongoing, and even if the Ethicon Entities needed a modest extension of certain deadlines, that is something the district court could have easily accommodated. Whether Mr. Eichin had named his expert before the deadline, or been allowed to at a later date, this did not prejudice the Ethicon Entities.

The length of the delay was incredibly short compared to other cases where there was a months- or years-long delay and discovery had already closed. Here, the parties were still in the midst of discovery, and even though an extension may have resulted in a modest adjustment to the entire scheduling order, it would not have made any substantial change to the timeline of the litigation.

As for the last two remaining factors, the reason for the delay and whether Mr. Eichin acted in good faith, both weigh in favor of granting the amendment. The failure to name an expert before the deadline was the result of not knowing the exact

19

model number of the surgical stapler, which was evidence necessary to make the strategic decision to retain an expert. Once Mr. Eichin determined the model number of the stapler, he timely moved to extend the expert deadline.

The facts show that Mr. Eichin met the "excusable neglect" standard under Rule 6, which was the more-specific rule of procedure since the deadline was for a mandatory expert disclosure under Rule 26, and Rule 6 provides for an extension of a deadline after the deadline had already passed. Had the district court applied the correct standard and not misunderstood the factual timeline, the district court would have granted the motion to extend the expert deadline and denied the Ethicon Entities' motion for summary judgment. Instead, the district court employed the wrong legal standard in analyzing this issue, which is reversible error.

## CONCLUSION

Mr. Eichin requests that this Court remand his case to the district court because, based on the facts as they actually existed, there was good cause and excusable neglect to amend and extend the expert deadline. In the alternative Mr. Eichin requests that this Court remand the case back to the district court for reconsideration of its ruling denying the motion to amend and granting the Ethicon defendants' motion for summary judgment based on the correct factual circumstances and using Fed. R. Civ. P. 6.

20

Respectfully submitted,

/s Hunter L. Windham
THE LAW OFFICE OF HUNTER L. WINDHAM, LLC
177 Grove Street
Charleston, South Carolina 29403
(843) 402-8057

Brandon C. Hall
HART, DAVID, CARSON, LLP
141 Traction Street, Suite 2136
Greenville, South Carolina 29601
(312) 768-0089

Joshua T. Hawkins
Helena L. Jedziniak
HAWKINS & JEDZINIAK, LLC
1225 South Church Street
Greenville, South Carolina 29605

October 8, 2025

21

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _25-1659_    **Caption:** _John Eichin v. Ethicon Endo-Surgery, LLC_

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ___4,933___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
14 point Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) _Hunter L. Windham_

Party Name _Appellant_

Dated: _10/08/2025_

12/01/2024  NA