IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CASE NO. 25-1659

John Eichin,

*Plaintiff-Appellant,*

vs.

Ethicon Endo-Surgery, LLC; Ethicon Endo-Surgery Inc.,

*Defendants-Appellees,*

and

Covidien LP; Covidien Sales LLC; Covidien Holding Inc.; Medtronic, Inc.,

*Defendants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF SOUTH CAROLINA AT FLORENCE

**RESPONSIVE BRIEF OF APPELLEES ETHICON ENDO-
SURGERY, LLC AND ETHICON ENDO-SURGERY, INC.**

C. Mitchell Brown, Esq.
A. Mattison Bogan, Esq.
James F. Rogers, Esq.
Axton D. Crolley, Esq.
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000
mitch.brown@nelsonmullins.com
matt.bogan@nelsonmullins.com
jim.rogers@nelsonmullins.com
axton.crolley@nelsonmullins.com

*Counsel for Appellees Ethicon Endo-Surgery,
LLC and Ethicon Endo-Surgery, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1659    Caption: John Eichin v. Ethicon Endo-Surgery, LLC; Ethicon Endo-Surgery, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ethicon Endo-Surgery, LLC
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☐NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   The sole member of Ethicon Endo-Surgery, LLC is Ethicon LLC, and Ethicon Endo-Surgery, LLC is an indirectly wholly-owned subsidiary of Johnson & Johnson, which is a publicly traded company.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑YES ☐NO
   If yes, identify all such owners:

   The sole member of Ethicon Endo-Surgery, LLC is Ethicon LLC, and  Ethicon Endo-Surgery, LLC is an indirectly wholly-owned subsidiary of Johnson & Johnson, which is a publicly traded company.

12/01/2019 SCC

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?              ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?              ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ James F. Rogers _____        Date: _____06/25/2025_____

Counsel for: Ethicon Endo-Surgery, LLC _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1659     Caption: John Eichin v. Ethicon Endo-Surgery, LLC; Ethicon Endo-Surgery, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Ethicon Endo-Surgery, Inc.
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

Ethicon Endo-Surgery, Inc. is a wholly owned subsidiary of Ethicon, Inc.  Ethicon Endo-Surgery, Inc.'s ultimate parent corporation is Johnson & Johnson, a publicy held corporation.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
If yes, identify all such owners:

Ethicon Endo-Surgery, Inc. is a wholly owned subsidiary of Ethicon, Inc.  Ethicon Endo-Surgery, Inc.'s ultimate parent corporation is Johnson & Johnson, a publicy held corporation.

12/01/2019 SCC

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ James F. Rogers    Date: 06/25/2025

Counsel for: Ethicon Endo-Surgery, Inc.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ISSUES............................................................................2

STATEMENT OF THE CASE................................................................................3

    I.    Factual Background. ................................................................................3

    II.    Procedural Background...........................................................................5

STANDARD OF REVIEW .....................................................................................9

SUMMARY OF ARGUMENT .............................................................................10

ARGUMENT.........................................................................................................11

    I.    This Court Lacks Jurisdiction over this Appeal because Appellant Does Not Challenge a Final Judgment...........................................................................11

    II.    Rule 16(b)(4)'s "Good Cause" Standard Governed Appellant's Motion to Amend the Scheduling Order Retroactively.................................................12

    III.    The District Court Correctly Found that Appellant Failed to Satisfy Rule 16(b)(4)'s "Good Cause" Standard. ...................................................................14

    IV.    Appellant Likewise Failed to Satisfy Rule 6(b)(1)(B)'s "Excusable Neglect" Standard. ......................................................................................................23

    V.    The District Court Properly Granted Summary Judgment after Denying Amendment of the Scheduling Order. ...........................................................26

    VI.    Appellant Otherwise Failed to Demonstrate a Genuine Issue of Material Fact Regarding His Products Liability Claims. ....................................................27

CONCLUSION.....................................................................................................29

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Babb v. Lee Cty. Landfill SC, LLC*,
    405 S.C. 129, 747 S.E.2d 468 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bhambhani v. Neuraxis, Inc.*,
    No. 22-1764, 2024 WL 2815063 (4th Cir. June 3, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Borden v. United States*,
    537 F. App'x 570 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bowman v. Korte*,
    962 F.3d 995 (7th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Britt v. Sorin Grp. Deutschland GMBH*,
    690 F. Supp. 3d 538 (D.S.C. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Bryant v. Trexler Trucking, Inc.*,
    4:11-cv-02254-RBH, 2012 WL 12897335 (D.S.C. Dec. 19, 2012) . . . . . . . . . . . . . . . . . . . 26

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
    334 F.3d 390 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*CBX Techs., Inc. v. GCC Techs., LLC*,
    533 F. App'x 182 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cook v. Howard*,
    484 F. App'x 805 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Essential Hous. Mgmt., Inc. v. Walker*,
    166 F.3d 332, 1998 WL 559349 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Faulconer v. Centra Health, Inc.*,
    808 F. App'x 148 (4th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*Fishback v. Shearin*,
    472 F. App'x 271 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Graves v. CAS Med. Sys., Inc.*,
    401 S.C. 63, 735 S.E.2d 650 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hebb v. City of Asheville, N. Carolina*,
    145 F.4th 421 (4th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Howard v. BP Expl. & Prod. Inc.*,
No. 22-11074, 2022 WL 17751496 (11th Cir. Dec. 19, 2022) . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Lone Star Indus., Inc.*,
Nos. 93-1505, 93-1506, 1994 WL 118475 (4th Cir. Apr. 7, 1994) . . . . . . . . . . . . . . . . . . . 16

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*,
860 F.3d 218 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*James River-Norwalk, Inc. v. Burch Roofing Co.*,
891 F.2d 287, 1989 WL 141656 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*John's Insulation, Inc. v. L. Addison & Assocs., Inc.*,
156 F.3d 101 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Marquez v. Silver*,
96 F.4th 579 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*May v. Stahl*,
91 F.3d 131, 1996 WL 380263(4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McMillan v. Cumberland Cnty. Bd. of Educ.*,
734 F. App'x 836 (4th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*Montgomery v. Anne Arundel Cnty., Maryland*,
182 F. App'x 156 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Moore v. Equitrans, L.P.*,
818 F. App'x 212 (4th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nourison Rug Corp. v. Parvizian*,
535 F.3d 295 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13, 16

*Odom v. G.D. Searle & Co.*,
979 F.2d 1001 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Osei v. Cushman & Wakefield*,
2022 WL 9886710, at *1 (4th Cir. Oct. 17, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 26

*Reyes v. BJ's Restaurants, Inc.*,
774 F. App'x 514 (11th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*RFT Mgmt. Co., LLC v. Powell*,
607 F. App'x 238 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

iii

*Shannon v. Gen. Elec. Co.*,
   186 F.3d 186 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Small v. Pioneer Mach., Inc.*,
   329 S.C. 448, 494 S.E.2d 835 (S.C. Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Southern v. Bishoff*,
   675 F. App'x 239 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Stanley v. Huntington Nat. Bank*,
   492 F. App'x 456 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sunvillas Homeowners Ass'n, Inc. v. Square D Co.*,
   301 S.C. 330, 391 S.E.2d 868 (S.C. Ct. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Thompson v. E.I. DuPont de Nemours & Co.*,
   76 F.3d 530 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vercon Const., Inc. v. Highland Mortg. Co.*,
   187 F. App'x 264 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wooton v. CL, LLC*,
   504 F. App'x 220 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Rules**

Fed. R. App. P. 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**Secondary Authority**

1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY (June 2025 update) . . . . . . 13

## **INTRODUCTION**

This case is about the ability of district courts to enforce their scheduling orders and control their docket.  When the district court entered its first scheduling order on March 14, 2022, it warned Appellant that a "scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  (JA56 (citation modified).)  This warning held true twenty months later, when, on November 30, 2023, the district court entered its fifth scheduling order confirming Appellant's expert disclosure deadline for March 15, 2024.

Appellant disregarded his expert deadline despite the necessity of expert testimony for his products liability claims—ostensibly because, after two years of litigation, he still had not identified the product at issue.  Then, twenty days after his expert deadline lapsed, Appellant moved to amend the scheduling order retroactively—but only after Appellees Ethicon Endo-Surgery, LLC and Ethicon Endo-Surgery, Inc. ("**EES**") had moved for summary judgment.  The district court denied Appellant's request to amend the scheduling order and granted summary judgment for EES—decisions Appellant now challenges.

For the reasons detailed below, however, the district court's decision to enforce its fifth scheduling order after Appellant's serial laxity was a legitimate exercise of its discretion, and summary judgment was proper.  Moreover, Appellant has not properly preserved or raised any argument as to why summary judgment was inappropriate on the record.

## STATEMENT OF THE ISSUES

I. Has Appellant sufficiently raised grounds challenging the district court's summary judgment so as to afford this Court jurisdiction?

II. Did Rule 16(b)(4)(B)'s "good cause" standard govern Appellant's motion to amend the scheduling order retroactively?

III. Did Appellant fail to satisfy Rule 16(b)(4)(B)'s "good cause" standard?

    A. Did the district court abuse its discretion in denying amendment of the scheduling order based in part upon Appellant's receipt of the incident surgical stapler's identity in December 2023?

    B. Did the district court abuse its discretion in denying amendment of the scheduling order based on the overall length of Appellant's lawsuit?

IV. Did Appellant likewise fail to satisfy Rule 6(b)(1)(B)'s "excusable neglect" standard?

V. Did the district court properly grant summary judgment after denying amendment of the scheduling order?

VI. Could Appellant have survived summary judgment, even with expert testimony?

2

## STATEMENT OF THE CASE

### I.    Factual Background.

####   A.    Appellant Undergoes a Sigmoidectomy on October 16, 2019.

After multiple bouts of diverticulitis in 2019, Appellant elected to undergo a sigmoidectomy surgery to remove a troublesome portion of his sigmoid colon (*i.e.*, the area between his descending colon and his rectum).  (JA194–95; JA218–21.)  A sigmoidectomy involves two steps:  (1) excision of the troublesome portion of the sigmoid colon; and (2) reconnection of the descending colon to the rectum through an "anastomosis."  (JA229–31; JA235–37; JA240–41.)  Put plainly,

> [the] intestine is sort of like a garden hose, and if you imagine that you cut like a foot section out of the garden hose and you needed to put the two ends back together, putting the two ends back together would be creating an anastomosis, so it's restoring continuity to the structure. . . . [I]t's putting the two parts back together and creating a connection such that you restore continuity.

(JA213–14.)

On October 16, 2019, Appellant's physician, Dr. Baughman, performed Appellant's sigmoidectomy at Grand Strand Medical Center without any issues.  (JA225–26; JA229–32; JA235–37; JA246–52.)

To complete the first step (*i.e.*, excision of the troublesome portion of sigmoid colon), Dr. Baughman utilized both a linear surgical stapler and a curved "contour" surgical stapler.[1]  (JA225–30.)  He successfully excised the troublesome portion of Appellant's sigmoid colon.  (JA229–30.)

Then, to complete the second step (*i.e.*, reconnection of Plaintiff's colon), Dr. Baughman used a circular surgical stapler made by EES (the "**Stapler**").  (JA238–40.)  To reconnect

---

[1] Neither the linear stapler nor the contour stapler made the staple line at the anastomosis site that is at issue in this case.

3

Appellant's colon, Dr. Baughman first sewed an "anvil" into the proximal end of Appellant's colon (*i.e.*, the upper end of the split garden hose). (JA232–34.) Dr. Baughman then pushed the Stapler through Appellant's rectum to the distal end of Appellant's colon (*i.e.*, the lower end of the split garden hose). (JA236–37.) The anvil and Stapler were then joined together, bringing the two portions of Appellant's colon back together. (JA236–37.) The Stapler was then fired, creating an anastomosis that connected the two ends of the colon back together. (JA213–15; JA235–37; JA239–48.)

Throughout the procedure, there was no indication of any malfunction with the Stapler, nor any concern regarding the success of the surgery. (JA251–52.) In fact, after Dr. Baughman completed the anastomosis, he twice performed a "leak test" to ensure that the Stapler had functioned properly—filling Appellant's pelvis with saline and instilling air into his rectum to determine if any bubbles formed along the staple line. (JA249–50.) The two leak tests revealed no escaping air or bubbles, confirming a successful anastomosis. (JA250.) Dr. Baughman was satisfied with the operation, finding no indication of any problem with the staples deployed by the Stapler. (JA251–52; JA277.)

### B. Appellant Undergoes Revision Surgery on October 21, 2019.

After his sigmoidectomy, Appellant remained in the hospital for multiple days. (*E.g.*, JA253–54.) During that time, Appellant began to experience an abnormally high heart rate. (JA253–55.) Then, on October 21, 2019, a CT scan revealed a significant amount of free air in Appellant's abdomen—potentially indicating that Appellant's procedure fell in the roughly 20% of sigmoidectomies that ultimately result in a leak at the anastomosis site. (*See* JA256–57; JA217; JA266–67.)

Later that day, Appellant underwent a revision surgery performed by Dr. Baughman and

4

his colleague, Dr. Clatterbuck.  (JA259–61.)  They identified a small hole at the anastomosis site of less than one centimeter, and they sewed it closed.  (JA262–63; JA267.)  Neither this hole nor the "nonfunctional staples" were attributable to any issue with the Stapler itself or even the surgery generally.  (JA265–66.)  On the contrary, Dr. Baughman testified that he understood Appellant to be at a heightened risk for a staple-line leak; Dr. Baughman did not attribute the small leak to the Stapler.  (JA268–70.)

### C.    Appellant Recovers in November 2019.

Following his revision surgery, Appellant completed post-operative treatment and follow-up appointments with Dr. Baughman.  (JA270–75.)  Appellant quickly recovered from his operation:  In November 2019—one month after the revision surgery—he went on a cruise to Mexico (JA196–97; JA203), and he returned to work as a real estate agent in March 2020 (JA205–08).  Appellant later became a factory representative for a marketing group of outdoor products; he does not have "any problems" physically doing his job.  (*See* JA191–93; JA204.)

## II.    Procedural Background

### A.    Appellant Institutes Suit in October 2021.

Plaintiff filed this suit on October 6, 2021 against now-former defendants Covidien LP, Covidien Sales LLC, Covidien Holding, Inc., and Medtronic, Inc. (collectively, "**Covidien**") in the United States District Court for the District of South Carolina ("**District Court**").  (JA15 *et seq.*)  Appellant filed his first amended complaint against the same entities on February 25, 2022.  (JA41 *et seq.*)

The District Court issued its first scheduling order on March 14, 2022, setting Appellant's initial expert disclosure deadline for July 8, 2022.  (JA57–58.)  The District Court issued a second scheduling order on April 21, 2022, extending Appellant's expert disclosure deadline to September

23, 2022.  (JA64–65.)  The District Court later issued a third scheduling order on September 6, 2022, extending Appellant's expert disclosure deadline to December 22, 2022.  (JA68.)

**B.    Appellant Files the Second Amended Complaint in October 2022 and the Ethicon Defendants Answer.**

On October 10, 2022, Appellant filed his Second Amended Complaint at Law.  (JA70 *et seq.*)  In that amended pleading, Appellant newly added Ethicon defendants to his case:  Johnson & Johnson and Ethicon, Inc. (together with EES, the "**Ethicon Defendants**").  (JA70; JA74–75.)  Johnson & Johnson and Ethicon, Inc. filed their answers on December 14, 2022.  (JA10 (noting ECF Nos. 48 and 49).)

After the Ethicon Defendants joined the case, the District Court issued a fourth scheduling order on May 22, 2023.  (JA96.)  The fourth scheduling order newly imposed upon Appellant a product identification deadline of November 15, 2023.  (JA96.)  It also extended Appellant's expert disclosure deadline to December 15, 2023.  (JA96.)

On June 28, 2023, both Johnson & Johnson and Ethicon, Inc. were removed from the pleadings by consent and substituted with other Ethicon Defendants:  EES, the Ethicon entities relevant to Appellant's suit.  (JA98–99.)  Once substituted, EES filed answers on July 26, 2023.  (JA100; JA127.)

Ultimately, the court issued a fifth and final scheduling order on November 30, 2023, extending Appellant's product identification deadline to February 15, 2024 and Appellant's expert disclosure deadline to March 15, 2024.  (JA155.)

**C.    EES Sends Appellant Documentation of Stapler's Identity on December 11, 2023.**

On December 11, 2023, EES's counsel sent Appellant an email with the subject line:  "RE: Eichin – Product ID/Deposition of Dr. Baughman."  (JA316.)  In that email, EES's counsel

expressly informed Appellant's counsel that "the stapler at issue was manufactured by Ethicon." (JA316.) EES's counsel attached screenshots identifying each of the five surgical staplers used in Appellant's sigmoidectomy and their catalogue numbers, which counsel for Grand Strand Medical Center had just provided. (JA319–23.) Only three of the five staplers listed were Ethicon endomechanical staplers.[2] One of those three was a linear stapler with the catalogue number TCR75 (JA319); one was a curved stapler with the catalogue number CS40G (JA320); one was the circular Stapler at issue with the catalogue number ECS33A (JA323).[3]

Based on the information provided by Grand Strand Medical Center, Appellant ultimately dismissed Covidien on January 10, 2024. (JA157–58.)

### D. Appellant's Treating Physician Is Deposed and Discusses the Stapler in Detail.

On January 11, 2024, one month after EES had provided Appellant the product identification information, EES deposed his treating physician: Dr. Clatterbuck. (JA210–78; JA359–73.) Dr. Clatterbuck was questioned by both EES's counsel and Appellant's counsel. (*See respectively* JA210–78; JA359–73.)

Dr. Clatterbuck provided detailed testimony on the different staplers used in Appellant's procedure. (*See* JA214–15 (distinguishing uses of different staplers); JA226 (discussing use of linear stapler); JA228–29, 232, 236 (discussing use of contour stapler); JA215–16, 232, 234–42,

---

[2] One of the five staplers was a Covidien stapler, not an Ethicon stapler. (JA321 ("Mfr. Covidien Sales LLC | Endomechanical.").) Another of the staplers identified was a skin stapler, not an endomechanical stapler. (JA322 ("Mfr. Ethicon Endo-Surgery Inc. | Staplers, Skin.").)

[3] Detailed information about these products is publicly available on Ethicon's website. *See* TCR75, JOHNSON & JOHNSON, https://www.ethicon.com/na/epc/code/tcr75?lang=en-default (last accessed November 10, 2025); *see* CS40G, JOHNSON & JOHNSON, https://www.ethicon.com/emea/epc/code/cs40g?lang=en-default (last accessed November 10, 2025); *See* ECS33A, JOHNSON & JOHNSON, https://www.ethicon.com/emea/epc/code/ecs33a?lang=en-default (last accessed November 10, 2025).

245–47 (discussing use of circular stapler).)  In fact, Dr. Clatterbuck specifically discussed the Instructions for Use for EES's Endoscopic Curved Intraluminal Stapler.  (JA518–19.)

Appellant's counsel questioned Dr. Clatterbuck about circular staplers (such as the Stapler at issue in this case).  (JA360–61.)  In fact, Appellant's counsel questioned Dr. Clatterbuck specifically about the firing of the Stapler used in Appellant's procedure (JA361).  Appellant's counsel neither referenced any confusion about the identity of the stapler at issue in his case nor inquired of Dr. Clatterbuck about that topic.  (*Compare* JA359–73.)

**E.      Appellant Fails to Identify Any Expert, Serve an Expert Report, or Request Additional Time to Do So before His Deadline Expires.**

Under the fifth and final scheduling order entered by the District Court, February 15, 2024 was Plaintiff's deadline to "identify all evidence relating to product identification of the stapler." (JA155.)  And March 15, 2024 was Plaintiff's deadline to "file and serve a document identifying by full name, address, and telephone number each person whom Plaintiff expect[ed] to call as an expert at trial" and to provide a "written report" therefor.[4]  (JA155.)

Appellant did not submit any product identification evidence on his deadline of February 15, 2024.  In fact, only on February 16, 2024 (one day after his product identification deadline) did Appellant serve his first set of discovery requests directed to EES.[5]  (JA531; JA412–45.)

Nor did Appellant identify any experts, serve any expert reports, nor request any additional time to do so by his deadline of March 15, 2024.  Nor did Plaintiff move the District Court to enlarge his product identification deadline or his expert disclosure deadline.  In fact, even by the

---

[4] A typographical error in the Fifth Consent Amended Scheduling Order (filed November 30, 2023) listed Plaintiff's expert deadline as "March 15, 2023" rather than March 15, 2024.

[5] Appellant previously had served a copy of discovery requests directed to Covidien on September 1, 2023.  (JA294 n.3.)

date of the District Court's order denying amendment of the scheduling order on October 24, 2024, Appellant still had not identified—much less provided the report of—any expert.  (JA533.)

### F. The District Court Denies Leave to Amend and Grants Summary Judgment against Appellant.

On March 27, 2024 (twelve days after Appellant's expert deadline had lapsed), EES filed its motion for summary judgment in the District Court.  (JA160 *et seq.*)  In response, on April 4, 2024, Appellant filed his motion to amend the scheduling order (JA288).

On October 24, 2024, the District Court issued an order and opinion resolving both EES's motion for summary judgment and Appellant's motion to amend the scheduling order.  (JA520 *et seq.*)  The District Court first denied Appellant's motion to amend the scheduling order, finding that Appellant had failed to satisfy Rule 16(b)(4)(B)'s "good cause" standard for amending a scheduling order retroactively.  (JA529–33.)  The District Court then granted EES's motion for summary judgment, finding that Appellant's inability to offer necessary expert testimony for his complex products liability claims entitled EES to judgment as a matter of law.  (JA533–39.)

On November 1, 2024, Appellant moved the District Court to reconsider its order denying him leave to amend the scheduling order and granting EES's motion for summary judgment.  (JA541 *et seq.*)  On May 14, 2025, the District Court denied reconsideration.  (JA697 *et seq.*)  On June 6, 2025, Appellant noticed the instant appeal.  (JA700.)

### STANDARD OF REVIEW

This Court reviews the denial of a motion to extend a scheduling order's deadlines for abuse of discretion.  *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *see also May v. Stahl*, 91 F.3d 131, 1996 WL 380263, at *1 (4th Cir. 1996) (per curiam) (affirming denial of motion to extend deadline for identifying experts under scheduling order); *Osei v. Cushman &*

*Wakefield*, 2022 WL 9886710, at *1 (4th Cir. Oct. 17, 2022) (similar).

**SUMMARY OF ARGUMENT**

The District Court rightly exercised its discretion to deny Appellant leave to amend the scheduling order because Appellant failed to demonstrate "good cause" for his delay under Rule 16(b)(4)(B) of the Federal Rules of Civil Procedure. The District Court then properly granted summary judgment against Appellant.

In October 2021, Appellant filed this products liability case over a surgical stapler used in his 2019 colon surgery. Appellant obtained the specific model number of the stapler at issue on December 11, 2023. On January 11, 2024, Appellant's treating physician was deposed, and Appellant's counsel discussed the incident stapler at length with the physician. Thus, well before Appellant's expert disclosure deadline of March 15, 2024—and even before the scheduling order's product identification deadline of February 15, 2024—Appellant had everything needed to satisfy both obligations.

Nevertheless, Appellant not only failed to meet his product identification deadline, but he failed to meet his expert disclosure deadline—a deadline originally set for June 8, 2022; then moved to September 23, 2022; then moved to December 22, 2022; and then moved to December 15, 2023 before its final extension. Despite knowing the necessity of expert testimony for a complex products liability case at the outset of his case, Appellant did not seek amendment of the scheduling order before his expert deadline ran. Nor did he seek retroactive amendment in the two weeks following expiration of that deadline. Rather, Appellant only moved to amend the scheduling order to reinstate his lapsed expert deadline twenty days after its expiration. The District Court denied Appellant's belated motion—citing not just his pattern of laxity in obtaining, reviewing, and acting upon the information necessary to establish his claims, but also his lack of

10

diligence in seeking amendment to redress his previous delays. The District Court resultantly granted summary judgment against Appellant.

The District Court properly exercised its discretion to enforce its fifth scheduling order and rightly granted summary judgment. Appellant knew the necessity of expert medical testimony from the outset of his case on October 6, 2021. Yet, he failed to undertake the investigative steps necessary to retain an expert by his March 15, 2024 deadline—or even retain and disclose an expert by October 24, 2024, the date of the district court's order denying amendment. Accordingly, this Court should affirm the District Court's decisions below.

## ARGUMENT

The District Court acted within its discretion when it denied Appellant's motion to amend the scheduling order for the fifth time in order to extend his expert disclosure deadline.

### I. This Court Lacks Jurisdiction over this Appeal because Appellant Does Not Challenge a Final Judgment.

As a threshold issue, this Court lacks jurisdiction because Appellant does not challenge a final judgment. The denial of a motion to amend the scheduling order is an interlocutory order. *Fishback v. Shearin*, 472 F. App'x 271, 272 (4th Cir. 2012). This Court lacks jurisdiction to review such an interlocutory order. 28 U.S.C. § 1291. Though this Court can review such an interlocutory order if the appellant simultaneously appeals a final judgment into which the interlocutory order merges, *Hebb v. City of Asheville, N. Carolina*, 145 F.4th 421, 432 (4th Cir. 2025), Appellant does not offer meaningful argument regarding the District Court's summary judgment against him. *Compare* Fed. R. App. P. 28(a)(7), (8) (requiring inclusion in brief of "appellant's contentions and the reasons for them").

What's more, the District Court's summary judgment for Appellant's failure to provide expert testimony essential to his claims effectively constitutes a dismissal for failure to prosecute—

11

a type of interlocutory order that does not merge into a final judgment. *See Marquez v. Silver*, 96 F.4th 579, 583 (2d Cir. 2024); *John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 105 (1st Cir. 1998) (collecting cases); *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 192 (2d Cir. 1999).

Accordingly, because Appellant does not challenge a final judgment, this Court lacks jurisdiction over his appeal.

## II. Rule 16(b)(4)'s "Good Cause" Standard Governed Appellant's Motion to Amend the Scheduling Order Retroactively.

The District Court rightly determined that Rule 16(b)(4)'s "good cause" standard—rather than Rule 6(b)(1)(B)'s "excusable neglect" standard—governed Appellant's motion to amend the scheduling order. (JA529–31; JA698.)

Rule 6 provides general rules for extending deadlines derived from various sources, while Rule 16 provides specific rules for extending deadlines set by a scheduling order. *Compare* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired[,] if the party failed to act because of excusable neglect."), *with* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

As this Court has recognized, "[g]iven their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied . . . ." *Nourison*, 535 F.3d at 298 (collecting caselaw) (finding that Rule 16(b)(4)'s "good cause" standard trumped Rule 15(a)'s liberal standard for amendment of answer where party moved to amend the answer after deadline set by scheduling order); *Essential Hous. Mgmt., Inc. v. Walker*, 166 F.3d 332, 1998 WL 559349, at *4 (4th Cir. 1998) (table decision) (finding that Rule 16(b)(4)'s "good cause" standard trumped Rule 13(f)'s "no prejudice" standard for amendment of counterclaim where party moved

12

to amend his counterclaims after deadline set by scheduling order).[6]

The history of Rule 16 supports application of the "good cause" standard to retroactive motions to amend, as Professor Steven S. Gensler has explained:

> The better view is that requests to amend the scheduling order should be analyzed under Rule 16(b)'s good cause standard only. Rule 16 did not require scheduling orders until 1983. When the requirement was introduced, the rulemakers could have referred to (or silently relied on) the existing Rule 6 structure for seeking extensions, which has been in place since 1938. Instead, the rulemakers elected to include specific standards in Rule 16, adopting good cause as the standard governing changes to the scheduling order . . . . [There is not] any mention of Rule 6 or the excusable neglect standard in the rule text or the Committee Notes. Thus, though the matter is not without debate, the better interpretation of the rules scheme as a whole is that the rulemakers intended Rule 16's standards for modifications to occupy the field.

1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY § 16:33 (June 2025 update).

Appellant appears to contend that, because "he only sought an extension of time to provide his expert disclosure, which his ordinarily governed by Rule 26," he was not actually seeking amendment of the scheduling order. (Brief 17–18.) But, once the District Court had provided for specific deadlines in its scheduling order (rather than chosen to rely upon the default deadlines of the Federal Rules of Civil Procedure), Appellant could not alter those deadlines without altering the scheduling order. *See Nourison*, 535 F.3d at 298 ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied . . . ."); *Faulconer*, 808 F. App'x at 152 ("Under Rule 16 of the Federal Rules of Civil Procedure, the district court was required to enter a scheduling order 'limiting the time to amend the pleadings.' And once it did

---

[6] *See also Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (same); *Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012) (same); *McMillan v. Cumberland Cnty. Bd. of Educ.*, 734 F. App'x 836, 845 (4th Cir. 2018) (same); *Moore v. Equitrans, L.P.*, 818 F. App'x 212, 218 (4th Cir. 2020) (same). Despite the unanimity of these cited decisions, this Court once indicated otherwise in an isolated unpublished opinion penned nearly four decades ago. *See James River-Norwalk, Inc. v. Burch Roofing Co.*, 891 F.2d 287, 1989 WL 141656 (4th Cir. 1989) (per curiam) (table decision). This Court appears to have never cited *Burch Roofing* since.

13

so, that schedule could be 'modified only for good cause and with the judge's consent.'  So when [appellant] moved to amend his complaint, more than eight months after the scheduling order's deadline, the standard that applied was not Rule 15 but rather the 'good cause' requirement of Rule 16." (citation modified)).

Accordingly, the District Court correctly determined that Rule 16(b)(4) (rather than Rule 6(b)(1)(B)) governed Appellant's request to modify the scheduling order to extend his expert disclosure deadline.

### III.    The District Court Correctly Found that Appellant Failed to Satisfy Rule 16(b)(4)'s "Good Cause" Standard.

After correctly determining that Rule 16(b)(4)'s good cause standard governed Appellant's motion to amend the scheduling order, the District Court rightly applied that standard and found that Appellant failed to meet it.  (JA531–33; JA698.)

"Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment."  *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015) (quoting *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004)); *Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.").  Indeed, the "touchstone" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'"  *Faulconer*, 808 F. App'x at 152.

Thus, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors—including the presence or absence of prejudice to the other party—generally will not be considered.  Instead, only diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard."  *Id.* (citation sentence omitted) (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)); *McMillan*, 734 F. App'x at 846.  "[T]he

14

party seeking an extension must show that, despite due diligence, it could not have reasonably met the scheduled deadlines." *Southern v. Bishoff*, 675 F. App'x 239, 249 (4th Cir. 2017) (quoting 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 16.14[1][a], at 16-75 (3d ed. 2016))).

## A.    Appellant Failed to Meet Rule 16(b)(4)'s "Good Cause" Standard.

Appellant failed to meet Rule 16(b)(4)'s "good cause" standard.  As set forth above and detailed by the District Court, Appellant engaged in serial laxity throughout his case before missing his expert disclosure deadline:

> Plaintiff's alleged injury occurred on October 16, 2019.  On October 6, 2021, Plaintiff filed his Complaint.  On March 14, 2022, discovery began. . . .
>
> On May 22, 2023, the Court extended the expert disclosure deadline to December 15, 2023, and on November 30, 2023, the Court again extended it to March 15, 2024.  On January 11, 2024, the parties deposed the treating surgeon, Dr. Baughman.  Notably, the Fifth Amended Scheduling Order—the operative scheduling order in this case—required Plaintiff to "identify all evidence related to product identification of the surgical stapler" used during Plaintiff's surgery no later than February 15, 2024.
>
> On February 16, 2024, Plaintiff served discovery requests on EES, and EES responded to those discovery requests on March 18, 2024.  However, as noted, *Plaintiff's* expert disclosures were due on March 15, 2024.  Nevertheless, about two-and-a-half weeks after the deadline, on April 4, 2024, Plaintiff moved to extend his deadline to file his expert disclosure.

(JA531–32 (citation modified).)  Rejecting Appellant's attempt to blame EES for his years-long inattentiveness, the District Court found that Appellant's conduct failed to meet Rule 16(b)'s good cause standard:

> Plaintiff's arguments do not demonstrate diligence.  Instead, they simply frame the fact that Plaintiff waited almost four months from his December receipt of the identity of the Stapler to pursue [his belated request for] amendment, and Plaintiff did so nineteen days after the materials he seeks to obtain were due.  Even now, no motions to compel are pending before the Court, and the deadline to challenge the sufficiency of EES's discovery responses too has passed.
>
> Plaintiff has offered no evidence showing his diligence in seeking leave to amend the Scheduling Order or any impediments to the same.  Instead, without

15

justification, Plaintiff has failed to comply with the Fifth Amended Scheduling Order by "filing and serving a document identifying each person whom Plaintiff expects to call as an expert at trial by March 15, 2024." To date, Plaintiff has still not informed the Court of a retained expert or sought leave to file a written report by an expert. Accordingly, Plaintiff's motion to amend is denied.

(JA532–33 (citation modified).)

The District Court correctly exercised its discretion in finding that Appellant's conduct failed to meet Rule 16's good cause standard. Appellant knew of his need to retain an expert for his products liability claims before he even filed suit on October 6, 2021, and his original expert deadline was June 8, 2022. (JA521 n.2.) Yet, by the District Court's Order on October 24, 2024, Appellant still had failed to retain and disclose an expert—despite receiving four extensions, and despite receiving the model number of the surgical stapler on December 11, 2024. (JA521 n.2.) For the reasons detailed in the District Court's Order, Appellant's rationales for that failure did not demonstrate diligence. *Compare In re Lone Star Indus., Inc.*, Nos. 93-1505, 93-1506, 1994 WL 118475 (4th Cir. Apr. 7, 1994) (finding "good cause" to modify original scheduling order to permit amendment of pleadings after case was stayed for 6 months pending the plaintiff's Chapter 11 bankruptcy where there was "no suggestion that [the plaintiff] was being dilatory").

Accordingly, the District Court rightly exercised its discretion in finding that Appellant failed to satisfy Rule 16(b)'s "good cause" standard. *See Faulconer*, 808 F. App'x at 153; *Essential Hous. Mgmt., Inc. v. Walker*, 166 F.3d 332, 1998 WL 559349, at *3–4; *Montgomery*, 182 F. App'x at 162; *Stanley v. Huntington Nat. Bank*, 492 F. App'x 456, 462 (4th Cir. 2012).[7]

---

[7] *See also Nourison*, 535 F.3d at 298 (affirming denial of untimely motion to amend pleading); *Vercon Const., Inc. v. Highland Mortg. Co.*, 187 F. App'x 264, 265 (4th Cir. 2006) (same); *Bhambhani v. Neuraxis, Inc.*, 2024 WL 2815063, at *2 (4th Cir. June 3, 2024) (same); *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015) (same); *Wooton v. CL, LLC*, 504 F. App'x 220, 223 (4th Cir. 2013); *McMillan v. Cumberland Cnty. Bd. of Educ.*, 734 F. App'x 836, 846 (4th Cir. 2018) (same); *CBX Techs., Inc. v. GCC Techs., LLC*, 533 F. App'x 182, 183 (4th Cir. 2013) (same).

**B. The District Court Did Not Abuse Its Discretion in Denying Appellant's Belated Motion to Amend the Scheduling Order Based in Part upon Appellant's Receipt of the Stapler's Identity in December 2023.**

Appellant's Brief contends that the District Court erred by denying amendment based upon its adoption of a false factual assumption: that Appellant actually knew "the identity and model number of the stapler" on December 11, 2023. (Brief 11–12.) This argument is meritless.

**1. The District Court did not find that Appellant *actually learned* the Stapler's identity on December 11, 2023.**

First, the District Court did not find that Appellant actually *knew* the identity and model number of the stapler on December 11, 2023. Rather, the District Court merely found that Appellant actually *received* the identity of the stapler in December 2023. As the District Court stated, "Plaintiff waited almost four months from his December *receipt* of the identity of the Stapler to pursue [the] amendment . . . ." (JA532 (emphasis added).)

The District Court made no finding about Appellant's subjective ascertainment of the model number of the Stapler—just his objective receipt of the information necessary to determine the Stapler's identity. Much less did the District Court base its decision upon such a finding. The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

**2. Even if the District Court had found that Appellant actually knew the Stapler's identity on December 11, 2023, that finding was true.**

Next, even if the District Court had made such a finding, the factual assumption was warranted because it is true. Appellant himself represented as much to the District Court in his motion to amend, stating that "the model number of the surgical staple[r] at issue (ECS33A model) was not ascertained until December 2023." (JA288.) And Appellant confirmed this fact in his

17

reply brief: "It was not until . . . counsel for Grand Strand [Regional Medical Center] became involved late in December of 2023, that the parties were able to narrow down the identity of the stapler involved in the surgery." (JA306.)

Appellant cannot criticize the District Court for taking Appellant's own factual representations as true.[8]  The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

> **3.  Even if the District Court had found that Appellant actually knew the stapler's identity on December 11, 2023, Appellant still knew or should have known the stapler's identity by January 11, 2024.**

Further, even if the District Court had found that Appellant *actually* knew the stapler's identity on December 11, 2023, and even if that assumption was false, such a mistake would have been immaterial.

Appellant's treating physician, Dr. Baughman, discussed the incident Stapler at length during his January 11, 2024 deposition (JA210–85).  Appellant's counsel participated in the deposition of Appellant's physician (JA211) and asked many questions about the very stapler at issue. (JA359–67.)  Throughout the deposition, Appellant's physician offered detailed testimony about the steps undertaken in Appellant's sigmoidectomy and the use of different types of staplers therein.  (*See generally* JA214–78.)

Past the date of Dr. Baughman's deposition, Appellant could not claim ignorance of the Stapler's identity.  Had some uncertainty about the identity of the relevant stapler still persisted throughout his counsel's exchange with Dr. Baughman at the deposition, Appellant's counsel

---

[8] Of course, the resolution of any ambiguity created by Appellant's later contradiction of his representation (*e.g.*, JA548; JA676) is precisely the type of issue left to the discretion of the District Court.

simply could have asked the treating physician.[9]

If Appellant's refusal to pursue deposition questioning about the Stapler's identity does not confirm his knowledge of the Stapler's identity at that time, it at least undermines any ground for ignorance past that time. Appellant's suggestion that the deposition "did not confirm or deny which stapler was the culprit" (Brief 13) is nonsensical: Appellant's counsel was no passive observer to that deposition, and he did not neutrally watch it unfold as it may. On the contrary, he was tasked with gathering testimonial evidence to establish Appellant's claims, and he actively participated in questioning the physician. The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

> **4. Even if the District Court had found that Appellant actually knew the Stapler's identity on December 11, 2023, Appellant still should have served discovery requests on EES long before February 16, 2024.**

Moreover, if uncertainty about the Stapler's identity persisted past Dr. Baughman's deposition, Appellant could have served discovery requests promptly thereafter to ascertain the Stapler's identity. But he did not.

Instead, Appellant waited until February 16, 2024 to serve discovery requests upon EES (JA531)—placing the close of EES's 30-day window to respond under Rules 33(b)(2), 34(b)(2)(A), 6(a)(1)(C), and 6(d) at March 21, 2024.[10] Appellant neither moved the District Court

---

[9] After all, at the time of the deposition, Appellant's pending expert disclosure deadline of March 15, 2024 (JA155 ¶ 2) was not the only one he faced. Appellant also faced a pending February 15, 2024 deadline to "identify all evidence relating to product identification of the stapler" under the operative scheduling order (JA155 ¶ 1; JA531)—a deadline which he likewise missed and of which he never sought amendment.

[10] Appellant's Brief elides the two-month gap between Appellant's purported determination "that the stapler used was one of five potential Ethicon staplers" in December 2023 and his service of the first set of discovery requests to EES on February 16, 2024. (Brief 13 ("After Mr. Eichin determined that the stapler used was one of five potential Ethicon staplers, he issued various discovery requests to the Ethicon Entities . . . .").)

19

for (nor asked EES to consent to) a shorter responsive deadline in order to help Appellant meet his expert disclosure deadline. *Compare* Fed. R. Civ. P. 33(b)(2) ("A shorter . . . time may be stipulated to under Rule 29 or be ordered by the court."); Fed. R. Civ. P. 34(b)(2)(A) ("A shorter . . . time may be stipulated to under Rule 29 or be ordered by the court."). EES's service of timely (in fact, early) discovery responses on March 18, 2024 (JA581–614) cannot justify Appellant's missed deadlines.

Therefore, even if Appellant did not *actually know* the Stapler's identity on December 11, 2023 and the District Court wrongly assumed that he did, Appellant still could not show "good cause" for his failure to meet the expert deadline after his physician's deposition on January 11, 2024. Against the avenues just provided, Appellant cannot contend that he "had no way to know that ECS33A was the model number of the stapler that caused his injuries" before March 18, 2024. (Brief 13.) The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

> **5. Even if Appellant had no method to learn the Stapler's identity until March 18, 2024, he lacked good cause to not seek amendment until 20 days after expiration of his expert disclosure deadline.**

Finally, even if Appellant could not have learned the Stapler's identity until March 18, 2024 and the District erroneously assumed otherwise, Appellant still lacked good cause to not seek amendment of the scheduling order until 20 days after the expiration of his expert disclosure deadline. (Brief 14.)

By his expert disclosure deadline of March 15, 2024, Appellant's case had been pending for nearly two-and-a-half years (JA15) and was on its fifth scheduling order (JA57; JA64; JA68; JA96; JA155). Even if Appellant lacked the information necessary to retain an expert by that date, Appellant certainly knew of *his need* to retain an expert by that date. Yet, Appellant neither moved

the District Court for (nor asked EES to consent to) modification of the scheduling order before then.  The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

### C.   The District Court Did Not Abuse Its Discretion in Denying Appellant's Belated Motion to Amend the Scheduling Order Based on the Overall Length of His Lawsuit.

Additionally, Appellant contends that the District Court erred by denying amendment based upon its adoption of another false factual assumption:  that EES "had been litigating this action for years . . . before filing their motion for summary judgment." (Brief 15.)  This contention is likewise meritless.

### 1.   The District Court did not base its decision upon the length of EES's involvement in Appellant's case.

The District Court did not base its decision upon the length of EES's involvement in Appellant's case.  On the contrary, the District Court barely mentioned EES's involvement in its order denying leave to amend—focusing instead on Appellant's *own* conduct throughout his case.

The District Court's application of the "good cause" standard (JA531–33) surveyed multiple important moments in the case's history:  the 2019 injury; the 2021 institution of suit; EES's answers; extensions of the scheduling order deadlines; the deposition of Appellant's treating physician; Appellant's February 15, 2024 product identification deadline; Appellant's service of discovery requests on February 16, 2024; Appellant's expert disclosure deadline of March 15, 2025; EES's responses to discovery on March 18, 2024; and Appellant's motion to amend the scheduling order on April 4, 2024.  (JA531–32.)  Though once mentioned in this background, EES's length of involvement played no role in the District Court's subsequent analysis:

> Plaintiff's arguments do not demonstrate diligence.  Instead, they simply frame the fact that Plaintiff waited almost four months from his December receipt of the identity of the Stapler to pursue this amendment, and Plaintiff did so nineteen days

after the materials he seeks to obtain were due. . . .

Plaintiff has offered no evidence showing his diligence in seeking leave to amend the Scheduling Order or any impediments to the same.  Instead, without justification, Plaintiff has failed to comply with the Fifth Amended Scheduling Order by "filing and serving a document identifying each person whom Plaintiff expects to call as an expert at trial by March 15, 2024." . . . To date, Plaintiff has still not informed the Court of a retained expert or sought leave to file a written report by an expert.  Accordingly, Plaintiff's motion to amend is denied.

(JA532–33 (citation modified).)

Appellant cites no portion of the District Court's Decision to suggest that the length of EES's involvement in the case meaningfully affected the District Court's analysis—much less that the District Court "was misled" about the duration of EES's involvement.[11]

The District Court found that Appellant failed to establish good cause for amending the scheduling order based upon *Appellant's* repeated laxness since October 2021[12]—not based upon *EES's* time spent in the case.  The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

---

[11] Appellant contends that EES "misled the district court into thinking they had been in this action for years."  (Brief 15.)  But the District Court's own decision undercuts that suggestion. The District Court specifically cited the answers of Ethicon, Inc. and Johnson & Johnson alongside the answers of EES, explaining that EES's answers followed "amendment to pleadings to name only EES entities."  (JA531; *see also* JA174 (explaining that "Johnson & Johnson and Ethicon, Inc. were removed from the pleadings and replaced by the EES Defendants on June 28, 2023."); JA98–99 (granting substitution of EES for Johnson & Johnson and Ethicon, Inc. and providing deadline for EES to file answers).)

[12] Appellant also contends that EES "misled the district court into thinking" that Appellant's "action had been lingering on its docket" at the time of EES's brief in opposition to amending the scheduling order, filed on April 12, 2024.  (Brief 15 (quoting EES's statement that, "[t]his products liability case is two-and-a-half years old and on its fifth scheduling order.").)  But EES's statement was incontrovertible:  Appellant filed his action on October 6, 2021, but the action remained on the District Court's docket by April 12, 2024—and several basic steps remained incomplete at that time.

### 2. Even if the District Court had based its decision in part upon the length of EES's involvement in Appellant's case, the District Court would not have abused its discretion.

Even if the District Court had based its decision in part upon the length of EES's involvement in Appellant's case, the District Court would not have abused its discretion.

The Ethicon Defendants (all represented by the same counsel) first became involved in this case when Johnson & Johnson and Ethicon, Inc. filed their answers on December 14, 2022. (*See* JA98–99; JA10.)  Though he could have served discovery requests upon Johnson & Johnson or Ethicon, Inc., Appellant did not.  Later, the Ethicon Defendants proposed that EES be substituted for Johnson & Johnson and Ethicon, Inc. in order "to clean up the Ethicon entities by dismissing the [then-]current parties and substituting in two Ethicon entities." (JA95).  After substitution, EES filed answers, and those answers were substantively identical to the answers of Johnson & Johnson and Ethicon, Inc. (JA100 *et seq.*; JA127 *et seq.*)  Again, Appellant could have served discovery requests on EES shortly thereafter, but he failed to do so.  Instead, he only served discovery requests upon EES seven months after their formal entry into the case (and fourteen months after the other Ethicon Defendants' entry)—and only after Appellant's product identification deadline had expired.

The District Court did not abuse its discretion in denying Appellant's belated motion to amend the scheduling order.

## IV.   Appellant Likewise Failed to Satisfy Rule 6(b)(1)(B)'s "Excusable Neglect" Standard.

Even if Rule 6(b)(1)(B)'s excusable neglect standard governed Appellant's belated motion to amend the scheduling order, Appellant also failed to meet that standard.  Under the same facts recounted in the District Court's "good cause" analysis, Appellant equally failed to demonstrate "excusable neglect."

23

In examining the record for excusable neglect under Rule 6(b)(1)(B), this Court normally examines (1) the reason for the delay, including whether it was within the reasonable control of the movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) whether the movant acted in good faith; and (4) the danger of prejudice to the nonmovant. *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 226 (4th Cir. 2017). "The most important of the factors . . . is the reason for the failure to" act timely. *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). Excusable neglect "is not easily demonstrated, nor was it intended to be." *Id.* at 534. "[R]un-of-the-mill inattentiveness by counsel" will not do. *Id.* at 535.

### A.    Appellant's Reason for Delay Was Laxity.

Appellant's reason for delay—*i.e.*, the "most important of the factors"—was laxity, undermining any argument for "excusable neglect." *Id.* at 534. As detailed above, the stated reason for Appellant's delay was Appellee's purported failure to provide "complete answers" to discovery requests, ostensibly preventing Appellant from determining "the model number of the surgical staple[r] at issue" and thereby preventing retention of an expert. (JA288.) Yet, as further detailed above, Appellant's failure to meet the fifth scheduling order's expert deadline over two years into his case results from his own inattentiveness.

Appellant represented below that EES had provided him "the model number of the surgical staple[r] at issue (ECS33A model)" in December 2023 (JA288)—months before he served the discovery requests on February 16, 2024,[13] almost 2.5 years after filing his lawsuit on October 6, 2021, over 14 months after the Ethicon Defendants first entered the case on December 14, 2022, and only 28 days before Appellant's expert disclosure deadline on March 15, 2024. Appellant's

---

[13] Appellant later contradicted this statement. (*See supra* note 8.)

stated reason for delay reduces to "plain neglect"—not "excusable neglect." *See Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) ("[P]lain neglect is not 'excusable neglect' as Rule 6(b)(1)(B) requires.").

### B. The Other Rule 6(b)(1)(B) Considerations Weigh against "Excusable Neglect."

Though less significant than Appellant's reason for delay, the other Rule 6(b)(1)(B) considerations likewise weigh against excusable neglect. *MI Windows*, 860 F.3d at 226 (explaining that courts also examine the length of the delay and its potential impact on judicial proceedings; whether the movant acted in good faith; and the danger of prejudice to the nonmovant).

Appellant's delay was over one year, as his expert deadline was March 15, 2024, but he failed to disclose an expert before the Court refused reconsideration of its decision to deny amendment on May 14, 2025. And Appellant's delay had radical impacts on the judicial proceeding: It foreclosed his ability to offer expert testimony on his products liability claims—and thus foreclosed his claims altogether.

Additionally, bad faith permeated Appellant's quest for an extension: He falsely told the District Court (1) that he filed a motion to compel against EES (he never did; *see* JA6–13); (2) that he filed a motion to compel against a third-party hospital (he never did; *see* JA6–13); (3) that EES only provided him the model number on March 18, 2024 (EES provided it on December 11, 2023; *see* JA319–23); and (4) that EES had "failed to answer any discovery sent by Plaintiff" (EES answered timely on March 18, 2024; *see* JA412 *et seq.*).

Finally, Appellant's failure to identify an expert posed a significant danger to EES. Due to Appellant's failure to identify an expert, EES spent considerable time and expenses preparing their motion for summary judgment and elected not to identify an expert themselves. What's more,

as one District of South Carolina judge has observed in an analogous context,

> "upon receipt of the expert report, [EES] would need to expend the time associated with consulting [their] expert witness and any additional witnesses [whom they] deem[] appropriate to prepare for depositions and other expert-related discovery. [EES] would also need time to depose [Appellant]'s witness, evaluate his testimony, and then possibly be permitted time to search for and locate [their] own . . . rebuttal expert. Further, [Appellant's requested extension would have] result[ed] in [EES] incurring significant additional attorney and expert costs and fees."

*See Bryant v. Trexler Trucking, Inc.*, 4:11-cv-02254-RBH, 2012 WL 12897335, at *2 (D.S.C. Dec. 19, 2012).

Accordingly, Appellant's dilatory conduct failed to satisfy even Rule 6(b)(1)(B)'s "excusable neglect" standard.

**V.     The District Court Properly Granted Summary Judgment after Denying Amendment of the Scheduling Order.**

The District Court properly granted summary judgment after denying amendment of the scheduling order. Appellant failed to disclose an expert by the expert deadline and was thus precluded from offering expert testimony at trial. *See* Fed. R. Civ. P. 37(c)(1). But expert testimony was necessary for Appellant to establish his complex products liability claims under South Carolina law. *See Babb v. Lee Cty. Landfill SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468, 481 (2013); *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 79, 735 S.E.2d 650, 659 (2012); *Sunvillas Homeowners Ass'n, Inc. v. Square D Co.*, 301 S.C. 330, 335, 391 S.E.2d 868, 871 (S.C. Ct. App. 1990). Therefore, summary judgment was proper on his claims. *See Osei*, 2022 WL 9886710, at *1; *see also Howard v. BP Expl. & Prod. Inc.*, 2022 WL 17751496, at *3–4 (11th Cir. Dec. 19, 2022); *Reyes v. BJ's Restaurants, Inc.*, 774 F. App'x 514, 519 (11th Cir. 2019); *Borden v. United States*, 537 F. App'x 570, 575 (5th Cir. 2013).

**VI.    Appellant Otherwise Failed to Demonstrate a Genuine Issue of Material Fact Regarding His Products Liability Claims.**

Even if the District Court had permitted amendment of the scheduling order to extend Appellant's expert deadline, summary judgment still would have been warranted.  As detailed by the District Court, by the time of EES's motion for summary judgment, Appellant had three remaining products liability claims:  "(1) 'Strict Products Liability Manufacturing Defect'; (2) 'Negligence'; and (3) 'Strict Products Liability – Failure to Warn.'"  (JA533.)  Appellant could not survive summary judgment on any of these claims—even with expert testimony.

### A. Appellant Could Not Survive Summary Judgment on His Strict Liability Manufacturing Defect Claim Even with Expert Testimony.

First, Appellant could not survive summary judgment on his strict liability manufacturing defect claim because he had no evidence of any manufacturing defect in the specific Stapler at issue.  "Courts have identified a manufacturing defect as existing 'when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or foreseeable uses.'"  *Britt v. Sorin Grp. Deutschland GMBH*, 690 F. Supp. 3d 538, 543–44 (D.S.C. 2023) (citation modified) (granting summary judgment on manufacturing claim where plaintiff "presented no evidence that the [device] used during [the plaintiff's] surgery was defectively manufactured and did not conform to the manufacturer's design and specifications").

Appellant provided no evidence suggesting a manufacturing defect in the Stapler, and the only evidence on this issue undermined Appellant's claim:  Dr. Baughman testified that the Stapler functioned as expected.  (JA270; JA278.)  Moreover, Appellant's discovery deadline ran on July 5, 2024 (JA155)—long before the District Court granted summary judgment on October 24, 2024. (JA538.)  He never requested an extension to the fact discovery deadline; on the contrary, his

27

motion to amend the expert deadline in the scheduling order insisted that it "would not affect the remaining deadlines" therein. (JA289.) Thus, summary judgment on Appellant's strict liability manufacturing defect claim was proper—even if Appellant's expert deadline had been extended.

### B. Appellant Could Not Survive Summary Judgment on His Negligence Claim Even with Expert Testimony.

Next, Appellant could not survive summary judgment on his negligence claim because the available evidence attributed the cause of his leak to other factors—not the Stapler. To prove negligence in a products liability case, a plaintiff must establish that the product's defect actually and proximately caused his injury. *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 463, 494 S.E.2d 835, 842 (S.C. Ct. App. 1997).

Dr. Baughman's sworn testimony indicated that Appellant was at a heightened risk for a staple line leak—Dr. Baughman understood that Appellant in particular was at a higher risk for such a leak based on his diabetes, sleep apnea, and tissue thickness; moreover, Dr. Baughman did not attribute the small leak to the Stapler. (JA268–70; *cf.* JA284–85.) Thus, summary judgment on Appellant's strict liability negligence claim was proper—even if Appellant's expert disclosure deadline had been extended.

### C. Appellant Could Not Survive Summary Judgment on His Strict Liability Failure to Warn Claim Even with Expert Testimony.

Finally, Appellant could not survive summary judgment on his strict liability failure to warn claim because his own physicians confirmed that they would have used the Stapler even if different warnings had been provided. In order to prove inadequate warning claims in medical device cases, a plaintiff bears the burden of demonstrating "that the additional non-disclosed risk was sufficiently high that it would have changed the [operating] physician's decision to [select] the product for the plaintiff." *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003 (4th Cir. 1992)

(affirming summary judgment where the physician's "testimony ma[de] clear that such a warning would not have changed his decision"). Here, Dr. Baughman testified that, even if he knew before Appellant's surgery everything that he later learned about the Stapler, he still would have used it. (JA277.) Indeed, even before Appellant's surgery, Dr. Baughman understood that roughly 20% of patients undergoing colorectal anastomoses would experience a leak. (JA217; JA258–59.) And Dr. Baughman understood that Appellant in particular was at a higher risk for such a leak based on his diabetes, sleep apnea, and tissue thickness. (JA268–70.) Ultimately, Dr. Baughman continued using the Ethicon Defendants' staplers even after Appellant's procedure without second thought. (JA216; JA276–77.)

## CONCLUSION

For the foregoing reasons, EES respectfully requests that this Court affirm the decision of the District Court denying Appellant leave to amend the scheduling order and granting summary judgment.

November 10, 2025

/s/ A. Mattison Bogan_____
C. Mitchell Brown, Esq.
A. Mattison Bogan, Esq.
James F. Rogers, Esq.
Axton D. Crolley, Esq.
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000
mitch.brown@nelsonmullins.com
matt.bogan@nelsonmullins.com
jim.rogers@nelsonmullins.com
axton.crolley@nelsonmullins.com

*Counsel for Appellees Ethicon Endo-Surgery, LLC and Ethicon Endo-Surgery, Inc.*

29

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25-1659        Caption: John Eichin v. Ethicon Endo-Surgery, LLC; Ethicon Endo

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.  Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains ___8,869___ [*state number of*] words

☐ this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
12-point Times New Roman _____ [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Axton D. Crolley _____

Party Name Appellees _____        Date: 11/10/2025 _____

12/09/2024  NA/MEO